UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

LISA GAIL THOMPKINS and
HARVEY SANFORD BOONE III,
individually and on behalf of those
similarly situated,

Plaintiffs,                          Case No. 1:12-cv-613

v.

KEY HEALTH MEDICAL
SOLUTIONS, INC., a California
corporation,

Defendant.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

Plaintiffs, Lisa Gail Thompkins and Harvey Sanford Boone III, respectfully

submit this brief in support of their motion for an Order certifying a plaintiff class in this

action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Because of the nature

of the claims asserted, this is a prototypical class action. For the reasons discussed

below, Plaintiffs' motion for class certification should be granted.

**STATEMENT OF FACTS**

A.      **The Class.**

Plaintiffs seeks certification of a class consisting of all individuals in North

Carolina on whose behalf Defendant, Key Health Medical Solutions, Inc., made advances

for medical services, or who were charged for or paid Defendant for medical services in

the four years prior to the filing of this action, May 18, 2012, and up to and including the

date of class certification. The number of class members is as yet undetermined, but Plaintiffs' counsel estimate that the proposed class numbers at least five thousand: According to the sworn statement filed by Defendant's CEO, Jeffrey Trigillio, in this action (Docket No. 12), Defendant made advances for 5,674 medical procedures between May 18 2008 and May 18, 2012.

**B.      Factual Allegations.**

The Amended Class Action Complaint (Docket No. 13) alleges that Defendant, Key Health Medical Solutions, Inc., is in the business of obtaining the right to bill injured people—generally personal injury plaintiffs—for medical services and tests, such as MRIs. Defendant is not a health care provider itself. Rather, Defendant takes an assignment of the provider's right to payment, pays the provider for an injured person's medical services, and then bills that person for those services. (Amended Complaint ¶¶ 4-6).

Defendant advances money to the injured person by paying for his or her medical services and agreeing to wait for repayment until the person's personal injury claim is settled. (*Id.* ¶ 9). However, Defendant's agreement provides that the insured person is responsible to pay the entire amount claimed by Defendant regardless of the outcome of the personal injury case. (*Id.* ¶ 19).

The amount Defendant seeks in repayment for an advance to a medical provider is substantially more than the health care provider typically charges the injured person for the medical services. (*Id.* ¶ 13). The patient is not apprised, when she signs Defendant's

confusing agreement, what Defendant's charges will be. (*Id.* ¶ 20). And even after Defendant starts billing the patient, neither the provider's actual charge for the services nor the amount of Defendant's markup is disclosed to the patient. (*Id.* ¶ 21). Pursuant to its claimed assignment of proceeds and its claimed medical provider's lien, Defendant then demands that the injured person pay its predatory charges. (*Id.* ¶ 18).

Defendant's markup on the first bill, which Defendant typically sends about a month after Defendant's advance, constitutes finance charges at an annual interest rate of over 3,000%. The amount charged does not increase and so the effective interest rate declines over time. Even so, at the end of four years the interest rate comes to about 50% per year. (*Id.* ¶ 15).

Defendant required putative class members to sign agreements purporting to assign the proceeds of their personal injury claims to Defendant. (One example of such agreements is attached as Exhibit 1 to the Amended Complaint). These agreements provide that the patient is responsible to pay the entire amount claimed by Defendant regardless of whether the proceeds of the personal injury case are sufficient to pay the debt.

Plaintiff Thompkins' and Boone's experiences with Defendant were similar. Ms. Thompkins presented to Triad Imaging in Greensboro, North Carolina, for MRI testing. After she signed Defendant's Agreement, Triad Imaging performed two lumbar spine MRIs on her. Triad Imaging's usual and customary charge for each such an MRI to a patient paying cash at that time was $520.00. (*Id.* ¶ 26). Defendant thereafter attempted

-3-

to collect $1,695 per MRI by sending collection letters and bills to Ms. Thompkins' attorney. (*Id.* ¶ 21). Ms. Thompkins refused to pay Defendant's unlawful charges.

Plaintiff Boone had an MRI performed at Triad Imaging on April 8, 2011, at a time that Triad Imaging's usual and customary charges for such an MRI to a patient paying cash was $530.00. Defendant then attempted to collect $1,895 for the MRI by sending collection letters and bills to Mr. Boone's attorney, Crumley Roberts, LLP. (*Id.* ¶¶ 35, 37). Boone's attorneys paid Defendant $1,276.51 from the settlement proceeds on or about July 20, 2011. (*Id.* ¶ 39).

Statewide, between May 18, 2008 and May 18, 2012, Defendant paid Triad Imaging and other North Carolina providers of diagnostic services $2,142,660 for 4,112 MRIs, an average of $521 per MRI. As of May 18, 2012, Defendant had collected $4,677,247.92 from these accounts, a return of $2,534,587.92, or 118%. (*Id.* ¶ 43). For CT scans during the same time frame, Defendant purchased $54,460.00 in receivables and has received $169,520.01, representing a 211% return to date. (*Id.* ¶ 44). Defendant took assignments of $8,685.93 in receivables for x-rays and has collected $25,464.33, a return of 193%. Finally, Defendant purchased $263,244.38 in receivables for other medical services and collected $506,873.68, reaping a 95% return. (*Id.* ¶ 46). All told, between May 18, 2008 and May 18, 2012, Defendant advanced $2,477,242.38 to North Carolina residents and collected $5,433.565.94, an un-annualized 119% return on principal. (*Id.* ¶ 42).

<u>**ARGUMENT**</u>

**THE COURT SHOULD CERTIFY THE ACTION AS A CLASS ACTION.**

In a succession of cases, United States Supreme Court, the Fourth Circuit, and this Court and other district courts in this Circuit have repeatedly endorsed class actions in resolving consumer claims. The Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). The Court has also recognized that the class action procedure is necessary for private rights of action to be initiated. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, *reh'g. denied*, 446 U.S. 947 (1980). As stated in *Roper*, class actions serve an important function in our system of civil justice because they permit plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Id.* at 338. *Gunnells v. Healthplan Svcs.*, 348 F.3d 417, 424 (4th Cir. 2003) (when lawsuit meets requirements of Rule 23, "certification as a class action serves important public purposes. In addition to promoting judicial economy and efficiency, class actions also 'afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions'"(quoting 5 James W. Moore, et al., MOORE'S FEDERAL PRACTICE § 23.02 (3d ed. 1999))). This case clearly satisfies the requirements of Rule 23.

The general criteria for certification of a class are set forth in Rule 23(a):

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

-5-

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Each of these requirements is met for the proposed class, as demonstrated in the sections that follow.

In addition to the requirements of Rule 23(a), a plaintiff seeking class certification must establish one of the three prerequisites set forth in Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Kirkman v. N.C.R.R. Co.*, 220 F.R.D. 49, 52 (M.D.N.C. 2004). Here, as shown below, subsection 23(b)(3), requiring that common questions of law or fact predominate is plainly satisfied as to the putative class.

In analyzing whether a class should be certified, Rule 23 should be given "'a liberal rather than a restrictive construction.'" *Gunnells v. Healthplan Svcs.*, *supra*, 348 F.3d at 424 (quoting *In re A.H. Robins Co.*, 880 F.2d 709, 740 (4th Cir.), *cert. denied sub nom. Anderson v. Aetna Cas. & Sur. Co.*, 493 U.S. 959 (1989). In determining whether to certify an action as a class action, the question for the court "is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (quoting *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971). *See also DeLoach v. Philip Morris Cos.*, 206 F.R.D. 551, 554 (M.D.N.C. 2002) ("In ruling

-6-

upon a motion for class certification, courts treat the substantive allegations contained in the plaintiffs' complaint as true" (citation omitted)).

The determinations called for by Rule 23 are questions addressed to the sound discretion of the district court. *Gulf Oil Co., supra*, 452 U.S. at 100; *Gunnells v. Healthplan Svcs.*, *supra*, 348 F.3d at 424. A decision to grant class certification is not a final order; it may be altered or amended as the case progresses towards resolution on the merits. Fed. R. Civ. P. 23(c)(1)(C); *In re School Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir. 1986); 7B C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE, § 1785, at 128 (1986). Thus, even where the decision whether to certify a class is a close one, a court should rule in favor of certification, since the court has the option to decertify the class later pursuant to Rule 23(c)(1). *See Rodger v. Electronic Data Sys. Corp.*, 160 F.R.D. 532, 537 (E.D.N.C. 1995).

### A. The Members Of The Class Are So Numerous That Joinder Of All Of Them Is Impracticable.

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. Precise enumeration of the members of a class is not necessary for the named plaintiff to proceed as a representative of the class. *See, e.g., Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 98 (M.D.N.C. 1993); *Haywood v. Barnes*, 109 F.R.D. 568, 576 (E.D.N.C. 1986). *See generally* 7A C.A. Wright, A.R. Miller, M.K. Kane, FEDERAL PRACTICE & PROCEDURE § 1762 at 1-64 (2d ed. 1986).

Based on information provided in Defendant's Trigilio affidavit (Docket No. 12), the proposed class consists of at least 5,000 persons. A proposed class of this size easily

satisfies the numerosity mandate of Rule 23(a)(1). *See Gunnells v. Healthplan Svcs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (affirming district court order finding that "1400 employees plus their families . . . easily" satisfied numerosity requirement of Rule 23); *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (affirming district court finding that "480 potential class members would easily satisfy the numerosity requirement"); *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 333 (4th Cir. 1983) (229 class members was "easily enough to demonstrate the existence of a class"); *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (3,549 class members was "more than enough to satisfy the numerosity requirement"); *Rodger v. Electronic. Data Sys. Corp.*, 160 F.R.D. 532, 535 (E.D.N.C. 1995) ("[C]ircuit precedent has recognized class certification in classes with as few as 18 members . . . and that a class of as few as twenty-five to thirty members raises a presumption that joinder would be impracticable" (citation omitted)); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors" (citing 3B MOORE'S FEDERAL PRACTICE § 23.05[1] at n. 7 (1978) (internal quotations omitted)), *cert. denied*, 479 U.S. 883 (1986). Proposed classes of the size involved here allow the Court to presume the impracticability of joinder. *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 256 (M.D.N.C. 2007).

**B.     Questions Of Law Or Fact Common To The Class Exist.**

The commonality requirement is satisfied where there are common questions of law or fact.  There can be no serious dispute here with respect to the *existence* of common questions—indeed, Section E, *infra*, demonstrates that those common questions *predominate* over any individual questions.  *See* Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 4.22 at 4078 ("[I]f the predominance standard is met, the Rule 23(a)(2) prerequisite is necessarily satisfied"); *Tatum v. R.J. Reynolds Tobacco Co.*, *supra*, 254 F.R.D. at 64 ("'The commonality requirement is relatively easy to satisfy'" (quoting *Buchanan v. Consolidated Stores Corp.*, 217 F.R.D. 178, 187 (D. Md. 2003))); *Bussian v. DaimlerChrysler Corp.*, 2007 U.S. Dist. LEXIS 44184 at *5 (M.D.N.C. June 18, 2007) (test for commonality "is not demanding, and is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members"); *Woodard v. Online Info. Svcs.,* 191 F.R.D. 502, 505 (E.D.N.C. 2000) ("Rule 23(a)(2) does not require that all factual or legal questions raised in a litigation be common, so long as at least one issue is common to all members . . .  Factual differences among class members' cases do not violate the rule, so long as a common legal theory is shared" (citations omitted)).

In this case, as discussed in Section E below, it is obvious that there are issues common to all members of the proposed class, including but not limited to whether Defendant's interest rate/finance charges are unlawful; whether Defendant's agreements with Plaintiffs and putative class members are void; and whether Defendant's efforts to

-9-

collect the unlawful debt from class members violated North Carolina's debt collection statutes. These common questions easily satisfy the commonality element of Rule 23(a)(2). *Accord Eatmon v. Palisades Collection LLC*, 2011 U.S. Dist. LEXIS 4556 at *22-23 (E.D. Tex. Jan. 18, 2011) ("Here, the claims of the proposed class have a common crux: whether Defendant unlawfully engaged in debt collection activities based on Defendant's lack of a debt collection license during the relevant time period. This is sufficient to find commonality in the context of the [federal Fair Debt Collection Practices Act]"); *Bontempo v. Wolpoff & Abramson, L.L.P.*, 2008 WL 163051 at *6 (W.D. Pa. Jan. 15, 2008) (finding commonality where defendant allegedly utilized improper methods for calculating attorney's fees when attempting to collect on debts).

In sum, there are, undisputedly, questions common to all members of the putative class. The commonality requirement of Rule 23(a)(2) is, therefore, easily met in this case.

### C. Plaintiff's and Intervenors' Claims Are Typical Of Those Of The Members Of The Proposed Class.

The interests of the named Plaintiffs do not in any manner conflict with, nor are they antagonistic to, those of the members of the putative class. Plaintiffs' claims are, therefore, typical of the claims of the class members, as required by Rule 23(a)(3). *DeLoach v. Philip Morris Cos.*, *supra*, 206 F.R.D. at 555 ("'The second Rule 23(a)(3) requirement is that the representative claims be typical of the other members of the class. This has consistently been held to mean that his claim cannot be antagonistic to the claims of other members'" (quoting *Windham v. American Brands, Inc.*, 68 F.R.D. 641,

-10-

649 (D.S.C. 1975)).  As Judge Tilley wrote in *Simpson v. Specialty Retail Concepts*, supra, 149 F.R.D. at 99, "[t]ypicality does not mean identical."  *See also Tatum v. R.J. Reynolds Tobacco Holdings, Inc.*, *supra*, 254 F.R.D at 65 ("The typicality requirement is met where 'the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members'" (quoting *Rodger v. Electronic Data Sys. Corp.*, *supra*, 160 F.R.D. at 538)); *Woodard v. Online Info. Svcs.*, *supra*, 191 F.R.D. at 505 ("Typicality does not mean identicalness. . . .  The class representative may satisfy this requirement by demonstrating that his claims arise from the same practices, and are based on the same theory of law, as the class claims" (citations omitted)).

There is certainly no conflict or antagonism here between the interests of the Plaintiffs and those of the unnamed class members.  Plaintiffs and the members of the putative class seek to establish Defendant's liability and to recover damages for their losses on common legal and factual theories.  *Cf. Brown v. Nucor Corp.*, 576 F.3d 149 (4th Cir. 2009) ("[D]istrict court's assessment of the adequacy factor . . . was an abuse of discretion," despite conflicts between class members, where "[t]he district court can address plaintiffs' claims for injunctive or other relief after liability and other common issues are determined"), *cert. denied*, 130 S. Ct. 1720 (2010).  Plaintiffs, like all other members of the putative class, have been charged unlawful interest/finance charges by Defendant, and have been subjected to Defendant's unlawful efforts to collect the illegal debt.  Plaintiffs are typical of the class.  Such a common interest is all that Rule 23(a)(3)

-11-

requires for the claims to be considered typical. *Accord Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. Pa. 2001) ("Cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims" (citation, quotation omitted)); *Violette v. P. A. Days, Inc.*, 214 F.R.D. 207, 214 (S.D. Ohio 2003) (typicality requirement met where class representatives, as well as class members, executed retail installment sales contracts with interest rates allegedly exceeding the statutory finance charge limitation; court concluded that named plaintiffs "are members of all the classes they seek to represent, and therefore have claims typical of those of the class," despite the fact that named plaintiffs' primary claim was for equitable relief, while class members' primary claim was for monetary relief); *Eatmon v. Palisades Collection LLC*, *supra*, 2011 U.S. Dist. LEXIS 4556 at *23-24 (typicality element was met where Defendant "engaged in unlicensed debt collection activities" with respect to plaintiffs as well as members of the proposed class).

In sum, the typicality prong of Rule 23(a) is met because the interests of the named plaintiffs and the putative class "are sufficiently aligned to insure confidence in [the plaintiffs'] ability to adequately represent its interests." *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, *supra*, 246 F.R.D. at 258.

### D. The Plaintiff Will Fairly And Adequately Protect The Interests Of The Members Of The Proposed Class.

The final requirement of Rule 23(a) is that the "representative parties . . . fairly and adequately protect the interests of the class."  The burden is on the defendants to

-12-

demonstrate that the representative will be inadequate.  *See, e.g.*, *Haywood v. Barnes*, *supra*, 109 F.R.D. at 579.

Courts have generally held that the adequacy-of-representation requirement of Rule 23 is a two-pronged test.  First, there can be no antagonism or disabling conflict between the interests of a named class representative and the members of the class.  Second, counsel for the proposed class representatives must have the competence to undertake the particular litigation at hand.  *DeLoach v. Philip Morris Cos., Inc.*, *supra*, 206 F.R.D. at 556.  *See also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  The classic formulation of these elements is set forth in *Eisen v. Carlisle & Jacqueline*, 391 F.2d 555, 562 (2d Cir. 1968):

> What are the ingredients that enable one to be termed "an adequate representative of the class?"  To be sure, an essential concomitant of adequate representation is that the party's attorney be *qualified, experienced and generally able to conduct the proposed litigation*.  Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a *collusive suit* or that plaintiff has *interests antagonistic* to those of the remainder of the class.

(Emphasis added).

Both prongs of the "adequacy" test are met here.  First, as demonstrated above, Plaintiffs' interests in no way conflict with the interests of the members of the proposed class.  Indeed, their claims are completely typical of the claims of the members of the putative class.

Second, there can be no *bona fide* question as to the adequacy of the class representatives' counsel.  They have championed the rights of consumers in actions

-13-

including class actions throughout the Courts of this State, often resulting in significant developments in the jurisprudence.

Mr. Berry is a seasoned litigator who has been co-class counsel and claims administrator in several successful class actions which presented complex and unique legal questions: *Odell v. Legal Bucks, LLC*, 192 N.C. App. 298, 665 S.E.2d 767 (2008), *disc. rev. denied*, 363 N.C. 258, 676 S.E.2d 905 (2009); *Suggs-Jacobs v. Physicians Weight Loss Ctrs. of Am., Inc.*, 173 N.C. App. 663, 620 S.E.2d 232 (2005), *cert denied*, 360 N.C. 290, 628 S.E.2d 381 (2006). He is a member of the Bars of the Fourth Circuit, the Eastern and Middle Districts of North Carolina, and the State of North Carolina.

Mr. Bloss has acted as class counsel in several large class actions, including service as co-lead counsel in *McLaney v. First Carolina Communications, Inc*., *et al*., No. 96-CVS-194 (Sup. Ct., Watauga County, N.C.), settled in April 2000, after six days of trial; appellate counsel in shareholders' class action captioned, *Longman, et al. v. Food Lion. Inc., et al.,* No. 4:92 CV 705 (M.D.N.C.), *aff'd* 197 F.3d 675 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000); co-lead counsel in *Suggs v. Physicians Weight Loss Ctrs. of America, Inc.*, No. 00-CVS-7190 (N.C. Business Court), 173 N.C. App. 663; 620 S.E.2d 232 (2005), *cert. denied*, 360 N.C. 290; 628 S.E.2d 381 (2006) (class action on behalf of approximately 1,400 persons who were allegedly required to purchase prescription drugs at inflated prices; co-lead counsel in *Bussian v. DaimlerChrysler Corp.*, 1:04cv00387 (M.D.N.C.) (representing class of North Carolina purchasers of Dodge Durangos with an alleged ball joint defect); and co-lead counsel in *Odell v. Legal*

*Bucks, LLC*, 192 N.C. App. 298, 665 S.E.2d 767 (2008), *disc. rev. denied*, 363 N.C. 258, 676 S.E.2d 905 (2009) (class action challenging practice of litigation funding, whereby lenders advance funds to litigants and often extract 100% or more annual interest from litigation proceeds).  He is a member of the Bars of the United States Supreme Court, the Fourth Circuit, the Third Circuit, the Eleventh Circuit, the D.C. Circuit, the Middle, Eastern, and Western districts of North Carolina, and the District of Colorado, and the State of North Carolina.

Mr. Idol has 40 years of litigation experience, beginning as a law clerk in the Fourth Circuit Court of Appeals in 1972-1973.  He served as Assistant District Attorney in the Eighteenth Judicial District from 1973 through 1982, and is a member of the Bars of the United States Supreme Court, the Middle District of North Carolina, and the State of North Carolina.

### E.    Common Questions Predominate.

As previously noted, Rule 23(b)(3) requires that "the [common] issues of law or fact . . . predominate over any questions affecting only individual members."  The Supreme Court has instructed that "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to want adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, *supra*, 521 U.S. at 623.  *See also DeLoach*, *supra*, 206 F.R.D. at 560 ("The predominance test 'really involves an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by

-15-

allowing a multiple party dispute to be resolved on a class action basis'" (quoting *In re Corrugated Container Antitrust Litig.,* 80 F.R.D. 244, 2429 (S.D. Tex. 1978)). A common question is one that "arises from 'a common nucleus of operative facts' regardless of whether 'the underlying facts fluctuate over the class period and vary as to individual claimants.'" *In re School Asbestos Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984) (citing *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 690-91 (E.D. Pa. 1977); *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D. Tex. 1978).

In the instant case, it is plain that questions of law and fact common to the proposed class predominate over any questions solely affecting individual members of the proposed class. Among the questions of law and fact common to the class are:

(1)     Whether the Defendant has imposed on class members "finance charges" as defined by the North Carolina Retail Installment Sales Act, N.C. Gen. Stat. Chapter 25 ("RISA");

(2)     Whether Defendant is a "Seller" of "Services" for purposes of RISA;

(3)     Whether Defendant's finance charges are unlawful under RISA;

(4)     Whether the usury law, N.C. Gen. Stat. §§ 24-1, *et seq.*, applies to the transactions at issue because Defendant's payments were made to the medical providers, not directly to class members;

(5)     Whether Defendant made loans are advances to class members and charged or received interest from class members in excess of that allowed under § 24-1.1(c), but instead claims that it made no loans or advances to Plaintiffs;

(6)     Whether Defendant's practices violate the Consumer Finance Act, N.C. Gen. Stat. § 53-164, *et seq.*;

(7)     Whether Defendant's practices violate the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("UDTPA"));

-16-

(8)     Whether Defendant's agreements with Plaintiffs and putative class members are illegal and void;

(9)     Whether Defendant's efforts to collect the unlawful debt from class members violated North Carolina's debt collection statutes, N.C. Gen. Stat. §§ 75-50, *et seq.* (the "NCDCA");

(10)    Whether Defendant has been unjustly enriched by payments from class members; and

(11)    Whether class members are entitled to remedies including for rescission/restitution, for a constructive trust, and for a declaratory judgment that Defendant's agreements with Plaintiffs and putative class members are illegal and void.

Essentially, Defendant's liability in this case hinges on the resolution of the above issues. The existence of such "central or overriding question[s]," 1 H. Newberg & A. Conte, *supra*, § 4.25 at 4.85, plainly meets the test of Rule 23(b)(3). If the resolution of these common issues is in the proposed class member's favor, they will prevail; all that would remain would be the calculation of each member's damages.

Inasmuch as the claims against the Defendant arise out of the same set of operative facts and are based on common legal theories, the predominance of common questions of fact and law satisfying Rule 23(b)(3) is clear. Because Defendant's behavior was uniform towards all class members, it predominates over class members' individual behavior.

"In addition to providing classwide impact, Plaintiffs must show that damages are susceptible of common proof." *DeLoach, supra*, 206 F.R.D. at 564. Here, the records of Defendant and/or class members' medical providers will establish the amount of Defendant's advances, the cash price of the medical providers, and the number and nature

-17-

of Defendant's collection efforts.  Since class-wide liability issues and damage

calculations are susceptible of generalized proof, there is no barrier to class certification.[1]

*DeLoach, supra*, 206 F.R.D. at 566 ("Further, 'it has been commonly recognized that the

necessity for calculation of damages on an individual basis should not preclude class

determination when the common issues which determine liability predominate'" (quoting

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977)).

In addition to finding that common questions predominate, Rule 23(b)(3) also

requires that the Court determine that "a class action is superior to other available

methods for the fair and efficient adjudication of the controversy."  In considering this

issue, the Rule instructs the Court to consider:

> (A)  The interests of members of the class in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature of any
> litigation concerning the controversy already commenced by or against
> members of the class; (C) the desirability or undesirability of concentrating
> the litigation of the claims in a particular forum; (D) the difficulties likely
> to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).  *See DeLoach*, *supra*, 206 F.R.D. at 557.

In the case *sub judice*—given (1) the economic disparity between class members

and the Defendant and (2) the fact that pursuing an individual lawsuit would require such

---

[1] Even in the event that the Court determined that individual calculation of damages
could not be computed by a single objective standard, certification of a "liability only"
class is permitted.  *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be
maintained as a class action with respect to particular issues"); *Holmes v. Pension Plan of
Bethlehem Steel Corp.*, 213 F.3d 124, 137 (3d Cir. 2000); *DeLoach*, *supra*, 206 F.R.D. at
561 ("Courts have found that '[c]ommon proof of impact is possible without common
damage amounts'" (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 694 (D. Minn.
1995)).

-18-

a prodigious expenditure of resources that it could not be justified economically for a single class member—the action will proceed as to the unnamed class members *only* if the Court certifies a class.  As the Court pointed out in *duPont Glore Forgan, Inc. v. American Tel. & Tel. Co.*, 69 F.R.D. 481, 487 (S.D.N.Y. 1975), class adjudication of disputes such as this one is clearly superior to requiring each claimant to litigate his or her claim individually:

> [T]he time-cost factor of legal fees in view of the vigor of defendants' opposition [make] it uneconomical to proceed with this suit on an individual basis even assuming an ultimate recovery . . .  [T]he assertion that this action will not go forward at all if class action status is denied is plausible.  *The hard fact is that economicality indicates the likelihood that unless this action is permitted to proceed as a class suit, it is the end of this litigation* . . .  The sheer disparity of economic forces suggests the death knell of these claims if individual actions are required.

(footnote omitted; emphasis added).  *See also DeLoach, supra*, 206 F.R.D. at 566 (class treatment is superior to any other procedure where "[d]iscovery expenses alone would make individual pursuit of the claims prohibitive").

Plaintiffs are unaware of any similar litigation "by or against members of the class." Rule 23(b)(3)(B).  A pending California action, filed against Defendant on or about November 17, 2011 (*see* **Exhibit A**) and recently remanded to state court in California, *Washington v. Key Health Medical Solutions, Inc.*, 2:11-cv-10619-JHN-SSx (C.D. Cal. May 7, 2012), *appeal denied*, 12-80118 (9th Cir. Aug. 8, 2012), alleges Defendant's finance charges violate California consumer protection statutes, and requests certification of a class consisting of individuals in the United States who have "paid monies to Defendant Key Health pursuant to an assignment of proceeds for medical

-19-

services." The plaintiff in the California action asserts no cause of action under North Carolina law, makes no claim for persons who have not paid money to Defendant, and makes no claim relating to Defendant's collection practices. To Plaintiffs' knowledge, no substantive rulings have been made in the California litigation.

The Middle District of North Carolina is the ideal location for the class members' claims to be concentrated, as the Court is situated centrally among the class of North Carolina residents, and the parties will be assured of careful and insightful consideration of their respective positions in this Court.

Likewise, Plaintiff can foresee no management difficulties which would preclude this action from being maintained as a class action. *Accord DeLoach*, *supra*, 206 F.R.D. at 567 ("[W]hile the number of class members is in the hundreds of thousands, the difficulties attendant with calculation of damages do not make this case unmanageable. . . . [I]n cases where damages were capable of mathematical calculation, 'the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability'" (quoting *Windham v. American Brands, Inc*., 565 F.2d 59, 68 (4th Cir. 1977). In any event, potential management problems are not, standing alone, grounds for denying class certification. *DeLoach, supra*, 206 F.R.D. at 567; *Freedman v. Amalgamated Sugar Co. (In re Sugar Ind. Antitrust Litig.)*, 73 F.R.D. 322, 358 (E.D. Pa. 1976).

<u>**CONCLUSION**</u>

Rule 23's requirements for class certification are easily satisfied with respect to the proposed class. Accordingly, the Court should certify the action as a class action.

Respectfully submitted, this the 17th day of September, 2012.

<u>**/s/John F. Bloss**</u>
John F. Bloss
N.C. State Bar No. 23947
HIGGINS BENJAMIN, PLLC
101 West Friendly Ave., Suite 500
Greensboro, North Carolina 27401
Phone: (336) 273-1600
Fax:     (336) 274-4650
E-mail: jbloss@greensborolaw.com

<u>**/s/Frederick L. Berry**</u>
Frederick L. Berry
N.C. State Bar No. 9696
BARRON & BERRY, LLP
301 S. Greene St., Ste. 310
Greensboro, NC 27401
Phone: (336) 274-4782
Fax:     (336) 379-8592
E-mail: f_berry@bellsouth.net

<u>**/s/David H. Idol**</u>
David H. Idol
N.C. State Bar No. 5683
DAVID H. IDOL, ATTORNEY
P.O. Box 1776
High Point, NC 27261-1776
Phone:(336) 889-8111
Fax:     (336) 889-7764 fax
E-mail: helentidol@gmail.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification and a copy of such filing electronically to the following: Richard L. Farley and Rebecca K. Lindahl, attorneys for Defendant Key Health Medical Solutions, Inc.

This, the 17th day of September, 2012.


**/s/John F. Bloss**
*Attorney for Plaintiffs*