IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LISA GAIL THOMPKINS and          )
HARVEY SANFORD BOONE III,         )
individually and on behalf of those   )
similarly situated,                )
                                   )
                                   )
                Plaintiffs,        )
        v.                         )          1:12CV613
                                   )
KEY HEALTH MEDICAL                 )
SOLUTIONS, INC.,                   )
                                   )
                Defendant.         )

<u>MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE</u>

This matter is before the Court on (1) Defendant Key Health Medical Solutions, Inc.'s

Motion to Dismiss [Doc. #21]; (2) Plaintiffs' Motion for Class Certification [Doc. #23];

(3) Defendant's Request for Judicial Notice [Doc. #28]; (4) Plaintiffs' Request for Judicial Notice

and for Leave to Submit New Evidence in Support of Motion for Class Certification [Doc. #52];

(5) Defendant's Motion to Strike Plaintiffs' "Disclosure of New Matters" [Doc. #54]; and Plaintiffs'

Motion for Oral Argument on Class Certification [Doc. #61]. For the reasons that follow, it will be

recommended that Defendant's Motion to Dismiss [Doc. #21] be denied. The Motion for Class

Certification will be stayed in light of an overlapping nationwide class action proceeding in

California. The Requests for Judicial Notice will be granted and the Motion to Strike will be denied,

to the extent that the Court has considered all of the information submitted. The Motion for Oral

Argument will be denied as moot in light of the stay.

I.      Facts, Claims, and Procedural History

Plaintiffs Lisa Gail Thompkins ("Thompkins") and Harvey Sanford Boone III ("Boone")

allege that Defendant Key Health Medical Solutions, Inc. ("Defendant"), lends or advances money

to or on behalf of individuals injured as a result of a motor vehicle accident or other type of personal

injury and agrees to wait for repayment until the individual's personal injury claim is settled.

According to the First Amended Complaint, Defendant subsequently charges those individuals a

significantly higher amount than if they had paid in cash at the time of service. (First Am. Compl.

[Doc. #13] ¶¶ 8-9.) With respect to the individual Plaintiffs named here, the Complaint alleges that,

on or about May 4, 2007, Thompkins had two MRIs performed at Triad Imaging in Greensboro,

North Carolina (id. ¶ 27); that "Triad Imaging's usual and customary charges for such an MRI to a

patient paying cash at the time were approximately $520.00" (id.); that, upon information and belief,

Defendant "thereafter advanced to Triad Imaging on plaintiff Thompkins' behalf approximately

$520.00 for each of plaintiff Thompkins' MRIs" (id. ¶ 28); and that, subsequently, "Defendant

attempted to collect from Thompkins $1,695.00 per MRI by sending collection letters and bills to

her attorney" (id. ¶¶ 28-29). According to the Complaint, Thompkins settled her personal injury

claim in or about May 2011, obtained a settlement check for her personal injuries on May 15, 2011,

and "refused to pay Defendant's unlawful charges." (Id. ¶ 31.) With respect to Boone, the

Complaint alleges that, on or about April 8, 2011, Boone had an MRI performed at Triad Imaging in

Greensboro and that "Triad Imaging's usual and customary charges for such an MRI to a patient

paying cash at that time were approximately $530.00." (Id. ¶ 35.) According to the Complaint,

"Defendant attempted to collect $1,895.00 for the MRI" and "on or about July 20, 2011, [Boone's

attorney] paid $1,276.51 of Plaintiff Boone's personal injury settlement proceeds to Defendant." (Id. ¶ 39.)

As a result of the foregoing, the Complaint brings the following causes of action: (1) Unfair and Deceptive Trade Practices (id. ¶¶ 55-61); (2) Prohibited Acts by Debt Collectors (id. ¶¶ 62-67); (3) Retail Installment Sales Act (id. ¶¶ 68-76); (4) Usury (id. ¶¶ 77-80); (5) Consumer Finance Act (id. ¶¶ 81-84); (6) Unjust Enrichment (id. ¶¶ 85-86); (7) Rescission/Restitution (id. ¶¶ 87-88); (8) Constructive Trust (id. ¶¶ 89-90); and (9) Declaratory Judgment (id. ¶¶ 91-92). In addition, the Complaint alleges that the action is asserted as a class action "because questions of law and fact common to all members of the proposed class predominate over any questions affecting individual class members." (Id., ¶ 40.) The Complaint defines the proposed class as "all individuals in North Carolina on whose behalf Defendant made advances for medical services, or who were charged for, or paid Defendant for medical services in the four years prior to the filing of this action and up to and including the date of the class certification." (Id. ¶ 41.)

Defendant has moved to dismiss all claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Plaintiffs thereafter moved for "an order under Federal Rule of Civil Procedure 23(b)(3) that this proceeding be maintained as [a] Rule 23(b)(3) class action on behalf of a class comprised of the Plaintiffs and all other North Carolina persons similarly situated." [Doc. #23.] Several procedural motions followed. First, Defendant filed a Request for Judicial Notice asking the Court to take judicial notice of certain regulatory forms as part of the Rule 12(b)(6) determination. For their part, Plaintiffs filed a Motion for Judicial Notice and for Leave to Submit Evidence in connection with the class certification question, raising issues related to a parallel, nationwide proceeding in California against

3

Defendant for which a class settlement has been preliminarily approved. Defendant filed a Motion to Strike that submission. Plaintiffs also recently filed a Motion for Oral Argument on Class Certification. In considering these Motions, the Court will first consider Defendant's Rule 12(b)(6) Motion to Dismiss and Defendant's related Motion for Judicial Notice, and will then consider Plaintiffs' Motion for Class Certification and the related procedural motions and the parallel California proceedings.

II.     Motion to Dismiss

A Complaint fails to state a claim on which relief may be granted under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

A.   Unfair and Deceptive Trade Practices Act ("UDTPA")

Plaintiffs' first cause of action asserts a claim for unfair and deceptive trade practices in violation of North Carolina General Statute § 75-1.1 *et seq.* "The elements for a claim for unfair and deceptive trade practices are (1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) plaintiff was injured as a result." Phelps-Dickson Builders, L.L.C. v. Amerimann Partners, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005). Defendant contends that Plaintiffs have failed to state a UDTPA claim because "Plaintiffs admit . . . that [Defendant] did not make an advance to them, it bought their account receivable." (Def.'s Br. [Doc. #22] at 8.)

With respect to this contention, Defendant argues generally that all of Plaintiffs' claims should be dismissed because Defendant simply bought account receivables at a discount and Plaintiffs have not alleged that Defendant charged illegal interest or finance charges. As to the Unfair and Deceptive Trade Practices claim, Defendant also contends that "the [North Carolina Debt Collection Act ("NCDCA")] – and not the UDTP statute – provides Plaintiffs' exclusive remedy for [Defendant's] allegedly unfair or deceptive acts." (Id. at 16.) Finally, Defendant argues that Plaintiff Thompkins' UDTPA claim is barred by the applicable statute of limitations.

In considering these contentions, the Court notes first that, accepting all allegations in the Complaint as true, as the Court must, Plaintiffs' allegations are sufficient at this stage to state that Defendant made an advance or loan to or on behalf of Plaintiffs and that the circumstances surrounding that transaction were unfair or deceptive. With respect specifically to the allegations of a loan or advance, the Complaint alleges that "Defendant lends money to the injured person" (First Am. Compl. [Doc. #13] ¶ 9), that Defendant "advanced to Triad imaging" $520.00 on Thompkins' behalf (id., ¶ 28), and that Defendant "advanced to Triad Imaging" $530.00 on Boone's behalf (id., ¶ 36). As it relates to whether Defendant's actions were unfair or deceptive, the Complaint alleges that, at the time Thompkins and Boone underwent MRIs at Triad Imaging, the usual rate for an MRI was $520 or $530 if paid in cash at the time of service, respectively, that Defendant advanced to Triad Imaging $520 or $530 for Thompkins and Boone, but that Defendant subsequently sought to collect $1,695 from Thompkins for each MRI and $1,895 from Boone. Moreover, according to the Complaint, "[t]he injured person is not apprised, when he or she signs Defendant's agreement, what Defendant's charges will be." (Id., ¶ 20). These allegations, taken together, are sufficient to state a claim under the North Carolina UDTPA. Although as Defendant points out, the Complaint

contains allegations that could be construed as describing an arrangement where Defendant purchased Triad Imaging's account receivables at a significant discount, the Complaint also specifically alleges the funds were loaned or advanced, and sets forth sufficient allegations to at least make plausible Plaintiffs' contention that the substance of the transaction at issue is more in line with that theory. Indeed, Defendant's position is at odds with the allegations in the Complaint, which states that "Defendant should only have the right to charge the medical provider's rate for the service, yet it charges the injured people much more." (Id., ¶ 17.) Any further consideration of the substance and underlying factual support for Plaintiffs' claims would be beyond the scope of a Motion to Dismiss.

With respect to Defendant's contention that the NCDCA provides Plaintiffs' exclusive remedy for allegations of unfair or deceptive trade practices, the NCDCA "applies only when unfair and deceptive conduct occurs in the specific context of debt collection." DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760, 765 (M.D.N.C. 2003); see also N.C. Gen. Stat. § 75-56(a) ("The specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article."). Accordingly, to the extent that the alleged misconduct is outside the NCDCA, the NCDCA does not foreclose a separate UDTPA claim. See id. ("Claims can only be asserted under the [North Carolina] UDTPA if there is some abusive conduct alleged to have occurred outside the realm of debt collection."); see also Johnson v. MBNA Am. Bank, N.A., No. Civ. 1:05CV00150, 2006 WL 618077, at *8 (M.D.N.C. Mar. 9, 2006) (unpublished) (citing same). A plaintiff may plead alternative theories in his complaint, and here Plaintiffs allege violation of the NCDCA and also allege unfair

and deceptive trade practices that arguably fall outside the scope of the NCDCA. Accordingly, Plaintiffs' UDTPA claim should not be considered foreclosed by the NCDCA at this time.

Defendant also separately contends that Thompkins' UDTPA claim should be dismissed because it violates the applicable statute of limitations. The statute of limitations for an unfair and deceptive trade practice claim in North Carolina is four years. See N.C. Gen. Stat. § 75-16.2; see also Trantham v. Michael L. Martin, Inc., 745 S.E.2d 327, 334 (N.C. App. 2013) (citing same). "As a general rule, a motion to dismiss can reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred, only when 'all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" Bardes v. Massachusetts Mut. Life Ins. Co., 932 F. Supp. 2d 636, 641-42 (M.D.N.C. 2013) (quoting Goodman v. Praxair, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)) (additional quotation marks, citation, and alteration omitted).

Here, the Court cannot determine from the facts alleged that Thompkins' claims are time barred. Plaintiffs filed their original Complaint in state court on May 18, 2012. (Compl. [Doc. #2] at 11.) However, it is not clear from the Complaint when Thompkins first became, or should have become, aware of the facts that form the basis of the UDTPA claim. The oldest invoice attached to the First Amended Complaint displays a printed date of October 5, 2011. (See First Am. Compl., Ex. 2 [Doc. #13-2].) Defendant cites paragraphs 28 and 29 of the First Amendment Complaint as well as Exhibit 2 for its statement that "on July 26, 2007, [Defendant] attempted to collect $1,695.00 per MRI" from Thompkins. (Def.'s Br. [Doc. #22] at 3.) However, paragraphs 28 and 29 of the First Amended Complaint do not allege any dates (see First Am. Compl. [Doc. #13], ¶¶ 28-29), and, although Exhibit 2 does reflect an "Invoice Date" of July 26, 2007, it shows that particular copy was not available to Plaintiff prior to October 5, 2011, as previously noted (see id., Ex. 2 [Doc. #13-2]).

Because the First Amended Complaint and its attachments do not make clear the actual accrual date of Thompkins' claim, the statute of limitations would not foreclose Thompkins' UDTPA claim at the pleading stage. Accordingly, no basis exists at this stage to dismiss Plaintiffs' UDTPA claims.

B. Prohibited Acts by Debt Collectors

Plaintiffs' second cause of action is a claim for violation of the North Carolina Debt Collection Act ("NCDCA"). The NCDCA prohibits debt collectors from "[c]ollecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge." N.C. Gen. Stat. § 75-55(2). Defendant contends that Plaintiffs have failed to adequately allege a violation of the NCDCA because the Complaint "does not allege facts that demonstrate that [Defendant] charged any interest, or charges, let alone improper ones." (Def.'s Br. [Doc. #22] at 9.) That is, according to Defendant, "[t]o the contrary, Plaintiffs allege only that [Defendant] paid Triad Imaging a lower sum for MRI services than what [Defendant] sought to collect, *i.e.*, that [Defendant] bought an account receivable at a discount and assumed the risk of contingent collection in exchange for the potential to make a profit." (Id.) However, Defendant's argument again appears based on its own construction of the transaction. As noted, the Complaint plausibly alleges an alternative theory that Defendant paid Triad Imaging the usual fee that Triad Imaging charged consumers for an MRI, but then charged Plaintiffs significantly more than that amount. Such allegations are not consistent with Defendant's assertion that it simply bought the account receivables at a discount. Defendant's contentions are thus beyond the scope of a Motion to Dismiss and are better reserved for summary judgment or trial, after discovery illuminates the details of the transactions as between Plaintiffs, Triad Imaging, and Defendant.

C. Retail Installment Sales Act

In their fourth cause of action, Plaintiffs allege that Defendant violated the North Carolina Retail Installment Sales Act ("RISA") by charging an excessive finance charge. In seeking dismissal of this claim, Defendant first contends that Plaintiffs cannot state a claim, because, Defendant did not provide any goods or services to Plaintiffs. However, a "seller" under RISA includes "an assignee of the seller's right to payment." N.C. Gen. Stat § 25A-6. Plaintiffs' assert their claim under RISA to the extent Defendant was an assignee of Triangle Imaging. Defendant also contends that "Plaintiffs cannot sufficiently allege that the receivable was payable in installments or a finance charge was imposed." (Def.'s Br. [Doc. #22] at 10.) However, RISA defines a "finance charge" as, among other things, "[i]nterest, time price differential . . . or other similar charge however denominated." N.C. Gen. Stat. § 25A-8. A time price differential is "[t]he difference between a seller's price for immediate cash payment and a different price when payment is made later or in installments." Black's Law Dictionary (9th ed. 2009); see also Grand Blanc Cement Prod., Inc. v. Ins. Co. of N. Am., 225 Mich. App. 138, 149 n.3, 571 N.W.2d 221 (1997) ("A time-price differential charge is the difference between the cash and credit price, the latter being higher."). The allegations in the Complaint plausibly state that Defendant charged a time price differential or similar charge.

Defendant also contends that Thompkins' RISA claim warrants dismissal because Thompkins did not actually pay Defendant for the amounts billed. RISA provides that "[w]ith respect to a consumer credit installment sale contract, a seller may contract for and receive a finance charge not exceeding that permitted by this section." N.C. Gen. Stat. § 25A-15 (emphasis added). However, § 25A-44 further provides:

> In the event that a consumer credit sale contract requires the payment of a finance charge not more than two times in excess of that permitted by this Chapter, the

seller or an assignee of the seller *shall not be permitted to recover any finance charge under that contract* and, in addition, the seller shall be liable to the buyer in an amount that is two times the amount of any finance charge that has been received by the seller, plus reasonable attorney's fees incurred by the buyer as determined by the court. . . . .

In the event that a consumer credit sale contract requires the payment of a finance charge more than two times that permitted by this Chapter, the contract shall be void. The buyer may, at his option, retain without liability any goods delivered under such a contract and *the seller or an assignee of the rights shall not be entitled to recovery anything under such contract.*

N.C. Gen. Stat. § 25A-44. Thus, if the contract requires payment of a finance charge in excess of that allowed, the seller or assignee may not recover any finance charge, and if the contract requires payment of more than two times the allowed finance charge, the assignee is not entitled to recover anything under the contract. In this case, Thompkins' seeks remedies under § 25A-44, and also seeks a declaratory judgment. Accordingly, Thompkins' RISA claim should proceed for, at the very least, determination of whether Defendant is prohibited from recovering all or part of the amount that it claims Thompkins owes.

Defendant's Reply Brief raises two additional arguments for dismissal of Plaintiffs' RISA claims. In the Reply, Defendant first contends that a diagnostic center seeking to acquire an MRI machine must file an application for a Certificate of Need with the North Carolina Division of Health Service Regulation that sets forth the "average charge to the patient . . . for each of the 20 most frequent MRI procedures to be performed." 10A NCAC 14C.2702. Defendant further notes that RISA does not cover "services for which the cost is by law fixed or approved or filed with or subject to approval or disapproval by . . . [the State] . . . or any agency, instrumentality, or subdivision thereof," N.C. Gen. Stat. § 25A-5(b)(1). Defendant therefore contends that the MRI procedures at issue in the instant action are not covered by RISA. As part of this contention, Defendant has filed a related Request for Judicial Notice [Doc. #28], "ask[ing] the Court to take

judicial notice of the North Carolina Department of Health Service Regulation's current Certificate of Need Application Form for Acute Care Facilities, and Medical Equipment" (Br. [Doc. #30] at 2), which is attached to a declaration from counsel [Doc. #29-2].

"The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006). Therefore, this contention has not been properly raised. Moreover, even if it is considered, Defendant's assertion does not compel dismissal at this time. In this regard, it is not clear that the MRI costs for the procedures that Plaintiffs underwent were actually filed with an agency of the state of North Carolina, and the blank Certificate of Need Application Form does not answer that question. Nor is it clear that the requested estimated costs would bring the MRI services at issue within the exception contemplated by RISA. Therefore, Defendant's Motion for Judicial Notice will be granted to the extent that the Court has considered Defendant's filing, but Plaintiffs' RISA claims are not subject to dismissal on that basis.

In its Reply Brief, Defendant further contends that it is not liable for conduct that occurred before the assignment of the account receivable from Triad Imaging to Defendant. Specifically, according to Defendant, Plaintiffs in the First Amended Complaint "acknowledge that Triad Imaging assigned [Defendant] the accounts receivable and its lien rights for Plaintiffs' account" and the "very nature of an assignment and a purchase of an account receivable means that the assignor necessarily charged a certain price, established an account receivable, and then assigned that account receivable to the assignee." (Def.'s Reply [Doc. #31] at 9.) Thus, Defendant argues, "[b]y nature of the transaction, the charging occurred, if at all, before the assignment to [Defendant] because [Defendant] was never in a position to charge Plaintiffs anything prior to the assignment" and,

therefore, Defendant asserts that, "to the extent there was a RISA violation based on the charging of an excessive finance charge, it happened before any assignment, and is therefore not legally attributable to [Defendant]." (Def.'s Reply [Doc. #31] at 9.) This argument appears for the first time by way of Reply, and, because Plaintiffs have not had an opportunity to respond to it, should not provide the basis for any dismissal. Moreover, Defendant's argument again appears to be based on its own version of the transaction, and even if the transaction is characterized as an assignment (rather than a loan or advance), an assignee is liable as a seller under RISA, and here Plaintiffs allege that Defendant was directly involved in arranging the transaction and adding the excessive finance charge. Thus, further consideration of the scope of Defendant's involvement and potential liability as an assignee would be beyond the scope of a motion to dismiss in any event. Therefore, Defendant's contentions as to the RISA claim can be considered further after discovery, but would not support dismissal on a Motion to Dismiss.

D. Usury

Plaintiffs also assert a claim against Defendant for Usury in violation of North Carolina General Statute § 24-1.1. North Carolina usury statutes provide:

> Except as otherwise provided in this Chapter or other applicable law, the parties to a loan, purchase money loan, advance, commitment for a loan or forbearance other than a credit card, open-end, or similar loan may contract in writing for the payment of interest not in excess of:
> (1) Where the principal amount is twenty-five thousand ($25,000) or less, the rate set under subsection (c) of this section

N.C. Gen. Stat. § 24-1.1(a)(1).

Defendant presents two arguments for dismissal of Plaintiffs' usury claim: (1) "Plaintiffs do not state a claim for usury because they do not plead facts to support the conclusion that the transactions in which [Defendant] acquired Triad Imaging['s] receivables are 'loans'" (Def.'s Br.

[Doc. #22] at 12); and (2) Plaintiffs' usury and RISA claims are mutually exclusive. As to the former, again, the facts alleged in the Complaint, accepted as true and viewed in the light most favorable to Plaintiffs, are sufficient to plausibly allege that a loan occurred.[1] As to the latter contention, Defendant's position is that RISA contemplates a credit sale, which would be inconsistent with a usury claim. However, Federal Rule of Civil Procedure 8 specifically allows the pleading of alternative or inconsistent claims, and to the extent the transaction is actually determined to be a loan rather than a credit sale, the usury statute would apply. Therefore, the Court should decline to dismiss Plaintiffs' usury claim at this time on that basis.[2]

With respect to Plaintiff Thompkins, Defendant also contends that her usury claim again fails because the face of the First Amended Complaint makes it clear that she did not pay Defendant. Under North Carolina General Statute § 24-2, receiving or charging a greater rate of interest than that permitted results in "a forfeiture of the entire interest" which has been agreed to be paid, and if the interest has been paid, the person who paid the excessive interest may recover back twice the amount of interest paid. See Adams v. Beard Dev. Corp., 116 N.C. App. 105, 109, 446 S.E.2d 862, 865 (1994) ("The language of N.C.G.S. § 24-2 is clear that 'in case a greater rate of interest has been paid, the person . . . by whom it has been paid' may recover twice the amount of

---

[1] The North Carolina court of appeals has distinguished a loan from an advance on the basis that an advance "does not require unconditional repayment of the principal." Odell v. Legal Bucks, LLC, 192 N.C. App. 298, 313, 665 S.E.2d 767, 777 (2008). Given that the Agreements signed by Plaintiffs in this case called for repayment regardless of the success of their personal injury claims, the transactions at issue would more closely resemble a loan under the foregoing definition. Regardless, under North Carolina law, either is sufficient to establish the basis of a usury claim. See Odell, 192 N.C. App. at 315, 665 S.E.2d at 778 ("Defendants' argument that a contract may only be usurious if the borrower has an absolute obligation of repayment is inconsistent with the General Assembly's inclusion of both 'loan' and 'advance' transactions within the scope of N.C.G.S. § 24-1.1.").

[2] This claim was also first raised in Defendant's Reply Brief, and Plaintiffs should be given an opportunity to respond before considering dismissal on that basis.

interests paid. Thus, to be entitled to recover this penalty for usury, plaintiff must have been charged the usurious interest and must have actually paid the usurious interest). Thus, to the extent Thompkins has not actually paid the interest, she could not recover the "twice back" remedy, but it appears that she could still assert a usury claim seeking only forfeiture of interest. See, e.g., Adams, 116 N.C. App. at 108-09, 446 S.E.2d at 865-66.

Defendant also contends that any usury claim by Thompkins is barred by a two-year statute of limitations. North Carolina General Statute § 1-53(3) applies a two-year statute of limitations to "[t]he forfeiture of all interest for usury." In response, Thompkins contends that she "seeks a declaration that the Defendant has forfeited any right to collect interest and principal from her and an injunction preventing collection" and that "[a] forfeiture of principal and/or interest under the usury law . . . is not subject to a statute of limitation" (Pls.' Resp. [Doc. #25] at 20). Plaintiff cites Farmers' Bank & Trust Co. v. Redwine, 204 N.C. 125, 167 S.E. 687 (1933), in support. However, the Farmers' Bank court determined that an act ratified on April 1, 1931, creating the two-year statutory limitations period was not intended to apply retroactively. Indeed, more recent decisions of the North Carolina Court of Appeals confirm the application of a two-year statute of limitations to usury claims seeking forfeiture. See Adams, 116 N.C. App. at 108, 446 S.E.2d at 864 ("Section 24-2 allows the forfeiture of the entire interest which the note carries with it when there has been a 'taking, receiving, reserving, or charging a greater rate of interest' than allowed by law. . . . This remedy is subject to a two-year statute of limitations."); Merritt v. Knox, 94 N.C. App. 340, 342, 380 S.E.2d 160, 162 (1989) ("There are two statutory penalties for usury: (i) the entire amount of interest due is subject to forfeiture, and (ii) the debtor may recover twice the amount of interest paid. . . . Both remedies, however, are subject to a two-year statute of limitation." (internal citations omitted)).

14

As to the application of that two-year limitations period to the instant facts, "the limitations period begins to run from the time an agreement or charge for usurious interest is *first made*." Adams, 116 N.C. App. at 108, 446 S.E.2d at 864 (internal quotation marks omitted) (emphasis provided). Given that that the First Amended Complaint and its attachments leave it unclear as to when Defendant first invoiced Thompkins (see First Am. Compl., Ex. 2 [Doc. #13-2]), the Court cannot say that the two-year period necessarily expired prior to the filing of this action in state court in May 2012. Moreover, even if the interest due is not subject to forfeiture because of the statute of limitations, "usury invalidates the provisions of a note which provide for the payment of interest" above the legal rate. Merritt v. Knox, 94 N.C.App. at 342, 380 S.E.2d at 162. Therefore, it would be premature to dismiss the usury claim based on the statute of limitations at this time.

E.  Consumer Finance Act

Plaintiffs next assert a claim against Defendant for alleged violation of the North Carolina Consumer Finance Act. In relevant part, the North Carolina Consumer Finance Act provides:

> No person shall engage in the business of lending in amounts of fifteen thousand dollars ($15,000) or less and contract for, exact, or receive, directly or indirectly, on or in connection with any such loan, any charges whether for interest, compensation, consideration, or expense, or any other purpose whatsoever, which in the aggregate are greater than permitted by [North Carolina's usury laws] without first having obtained a license from the Commissioner [of Banks].

N.C. Gen. Stat. § 53-166. Defendant argues: "Like every other claim asserted by Plaintiffs, this claim fails because Plaintiffs did not plead any facts to demonstrate that Key Health is engaged in the business of lending or charges any interest in any usurious amount." (Def.'s Br. [Doc. #22] at 13.) However, as previously noted, the Complaint's allegations are sufficient to plausibly claim that Defendant loaned or advanced funds and charged excessive interest.

15

Defendant also claims that Thompkins' CFA claim fails because Thompkins alleges that she did not pay any amount to Defendant. The authority Defendant cites in support of this position appears to apply only to usury claims, and as discussed above, Thompkins usury claims are not subject to dismissal at this time. Moreover, the CFA makes it unlawful to "contract for" or "exact" charges greater than those permitted by North Carolina's usury laws. Therefore, Plaintiff Thompkins' claims are not subject to dismissal on this basis at this time.

F. Unjust Enrichment

Plaintiffs also assert equitable claims for unjust enrichment, rescission/restitution, and constructive trust. Unjust enrichment under North Carolina law has five elements:

> First, one party must confer a benefit upon the other party. Second, the benefit must not have been conferred officiously, that is it must not be conferred by interference in the affairs of the other party that is not justified in the circumstances. Third, the benefit must not be gratuitous. Fourth, the benefit must be measurable. Last, the defendant must have consciously accepted the benefit.

JPMorgan Chase Bank, Nat'l Ass'n v. Browning, 750 S.E.2d 555, 5559 (N.C. App. 2013) (internal quotation marks and citation omitted). Defendant contends that Plaintiffs fail to plead any facts to support this claim. Defendant, however, appears to examine the allegations specifically included under that heading in the First Amended Complaint without consideration of the other facts incorporated by reference.

Of note, a party cannot maintain a claim for unjust enrichment where an adequate remedy at law exists. See Embree Constr. Grp., Inc., v. Rafcor, Inc., 330 N.C. 487, 491, 411 S.E.2d 916, 920 (1992) ("The court's equitable intervention is obviated when an adequate remedy at law is available to the plaintiff."). In this case, numerous North Carolina statutes appear to provide adequate remedies for the wrongs alleged. Regardless, because discovery has yet to illuminate the exact nature

of the transactions as between Plaintiffs and Defendant, it would be premature to foreclose Plaintiffs' claims.

G.  Rescission/Restitution, Constructive Trust and Declaratory Judgment

Defendant contends that Plaintiffs' claims for rescission/restitution and for constructive trust should be dismissed because those are remedies as opposed to causes of action, and that Plaintiffs' claim for declaratory judgment warrants dismissal for the same reason.  See, e.g., Laws v. Priority Tr. Servs. of N.C., L.L.C., 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009) ("[T]he court agrees with Defendants' arguments that Plaintiffs' First and Sixth Claims for Relief (for Declaratory and Injunction [sic] Relief and for imposition of a Construction Trust) must be dismissed for failure to state a claim because these are remedies rather than separate causes of action.  North Carolina law appears to be well-settled in this regard.").  It may be that these claims are more appropriately designated as requests for particular remedies rather than separate causes of action.  However, this does not affect the substance of the claims that are proceeding in this case, and the Court can determine the propriety of particular requests for relief if Plaintiffs prevail on any of their claims. Therefore, the Court will not recommend dismissal of these claims, although they may be more appropriately construed as requests for particular remedies rather than separate causes of action. Having determined that the Motion to Dismiss should be denied, the Court now turns to Plaintiffs' request for class certification.

III.    Motion for Class Certification

Rule 23(a) provides that "[o]ne or more member of a class may sue . . . as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses

of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "[T]he final three requirements of Rule 23(a) 'tend to merge,' with commonality and typicality 'serving as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Brown v. Nucor Corp., 576 F.3d 149, 152 (4th Cir. 2009). To show "commonality," Plaintiffs must show "that 'there are questions of law or fact common to the class.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550-51 (2011) (quoting Fed. R. Civ. P. 23(a)(2)). Moreover, "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at 2551.

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Id. at 2551 (italics in original). The required analysis "'will entail some overlap with the merits of the plaintiff's underlying claim.'" Id. at 2552 (quoting General Tel. Co. of Sw. v. Falcon, 457 U.S. 147 (1982)). Indeed, "'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Id.; see also Ealy v. Pinkerton Gov't Servs., Inc., 514 F. App'x 299, 306 (4th Cir. 2013) ("[T]he trial court may find it necessary to

probe behind the pleadings and ultimately, will need to conduct a rigorous analysis to determine whether the Rule 23 prerequisites have been satisfied." (internal quotation marks omitted)).[3]

In the instant case, Defendant questions the commonality of the proposed class. Plaintiffs, in an attempt to support their argument regarding the propriety of the class, filed a Request for Judicial Notice and for Leave to Submit New Evidence in Support of Motion for Class Certification [Doc. #52]. Specifically, Plaintiffs request that "the Court (1) take judicial notice of filings made by the parties in Washington v. Key Health Medical Solutions, Inc., Case No.: BC473716 (Los Angeles, CA Superior Ct.) (the "California Action"), and (2) grant Plaintiffs leave to submit for the Court's consideration new evidence relating to the California Action." (Pls.' Request for Judicial Notice [Doc. #52] at 1.) Plaintiffs submitted the evidence in a filing entitled Plaintiffs' Disclosure of New Matters and Request for Oral Argument on Class Certification or for Status Conference [Doc. #51]. Defendant opposed that filing by way of its Motion to Strike Plaintiffs' "Disclosure of New Matters" [Doc. #54].

In considering these filings, the Court notes that it would be unable to make a determination as to the propriety of class certification without preliminary discovery and an evidentiary hearing. Although Plaintiffs contend that this matter represents "a prototypical class action" (Pls.' Br. [Doc. #24] at 1), the proposed class members would differ in details such as the services received, the amounts charged, and the amounts paid, if any. In other words, while broad questions regarding whether Plaintiffs' theory of the nature of the alleged transactions subjects Defendant to liability

---

[3] Plaintiffs cite Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974), for the proposition that the relevant question in determining the propriety of class certification "is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." In Dukes, the Supreme Court rejected a reading of Eisen that would suggest a preliminary inquiry into the merits is inappropriate in determining class action certification. Dukes, 131 S. Ct. 2552 n.6.

may be shared among the class, the specifics of Defendant's interaction with each purported class member appears to overlap only minimally, thus raising questions regarding the commonality of Defendant's liability on an individual basis. Although Plaintiffs assert that at least some of the differing information is easily acquired and thus does not impede class-wide resolution of this matter (see Pls.' Reply [Doc. #48] at 7), Defendant puts forth affidavits contending the opposite (see Def.'s Resp. [Doc. #43] at 6). Moreover, Plaintiffs' Motion to submit new evidence addresses material that, at least in part, was purportedly unavailable when the class certification motion was briefed, and, in any event, relates to the California Action.

At bottom, given the "rigorous analysis" required of Rule 23, see Ealy, 514 F. App'x at 305-306, and the state of the arguments and evidence currently before the Court, discovery and an evidentiary hearing would be needed on Plaintiffs' class certification motion. See Monroe v. City of Charlottesville, Va., 579 F.3d 380, 384 (4th Cir. 2009) ("When deciding a motion for class certification, a district court does not accept the allegations in the complaint as true; rather, an evidentiary hearing is typically held on the certification issue."). Plaintiffs would be permitted to submit relevant evidence at that time, and, accordingly, there would be no need to resolve Plaintiffs' Request for Judicial Notice and for Leave to Submit New Evidence in Support of Motion for Class Certification [Doc. #52] or, in turn, Defendant's Motion to Strike Plaintiffs' "Disclosure of New Matters" [Doc. #54].

However, in considering these issues, the Court also notes that although the named Plaintiffs are not a part of the class in the California Action, Plaintiffs' proposed class overlaps with that class, and most of the evidence Plaintiffs present in support of class certification is from the California

Action.[4]  A ruling at this time on Plaintiffs' class certification motion has the potential of creating unnecessary conflict with the pending California Action.  Under these circumstance, interests of comity alone warrant staying these proceedings.  See Advanced Internet Techs., Inc. v. Google, Inc., No. C-05-02579, 2006 WL 889477, at *1 (N.D. Cal. Apr. 5, 2006) (noting that while certain abstention doctrines may require a stay, "a federal court may stay its proceedings based on comity even when none of the abstention doctrines requires that it do so"); see also Fitzer v. American Inst. of Baking, Inc., No. CV 209-169, 2010 WL 1955974, at *2 (S.D. Ga. May 13, 2010) (granting stay in part because staying the proceedings "will likely prevent duplicative efforts and discovery costs for both Parties, particularly as those costs and efforts relate to the issue of class certification").  Moreover, the California Action was filed first, is a nationwide class action, and is proceeding on preliminary approval of a class settlement.  Although Plaintiffs take issue with the terms of that settlement, this is not the appropriate forum to address those concerns.  Indeed, it seems a particularly inappropriate use of the class certification process to allow Plaintiffs to use the present suit to disrupt the nationwide settlement in the California Action.  If the proposed settlement in the California Action is objectionable, those objections can be raised by potential class members in that suit.  If the named Plaintiffs in this case are not class members in the California Action, their claims in this case will not be precluded by that settlement, and at the conclusion of the California Action,

---

[4] According to Plaintiffs, in the California Action, "Plaintiff Washington recently redefined the proposed class for purposes of the settlement to include only Key Health borrowers who paid moneys to Key Health for MRI and CT scans on or before January 12, 2012, and only to the extent that 'the amount paid to Key Health was greater than what the medical service provider would have charged for the same medical diagnostic imaging services at the time such services were rendered."  (Pls.' Disclosure of New Matters [Doc. #51] at 9.)  In this action, Plaintiffs seek to certify a class consisting of "all individuals in North Carolina on whose behalf Defendant, Key Health Medical Solutions, Inc., made advances for medical services, or who were charge for or paid Defendant for medical services in the four years prior to the filing of this action, May 8, 2012, and up to and including the date of class certification."  (Pls.' Br. in Supp. Class Cert. [Doc. #24] at 1-2.)

any remaining class certification issue can then be considered with respect to North Carolina residents who are not members of the class in the California Action.

Therefore, the Court concludes that it is appropriate to stay consideration of class certification in this case pending final adjudication of the California Action. A district court has discretionary power to stay proceedings in its own court. Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936); see also In re: JPMorgan Chase LPI Hazard Litigation, No. C-11-03058, 2013 WL 3829271, at *3 (N.D. Cal. July 23, 2013) (citing same); Wince v. Easterbrooke Cellular Corp., 681 F. Supp. 2d 688, 692 (N.D.W. Va. 2010) (citing same). "Courts routinely exercise this power and grant stays when a pending nationwide settlement could impact the claims [in the case before them]." Wince, 681 F. Supp. 2d at 692; see also Blair v. Equifax Check Servs. Inc., 181 F.3d 832, 838-39 (noting the court's discretion in handling overlapping cases, and noting that "[w]hen overlapping suits are filed in separate courts, stays (or, rarely, transfers) are the best means of coordination."); Manual for Complex Litigation, Fourth, § 21.15 (2004) ("[A] delay in deciding certification might [ ] be appropriate if other cases in a state or federal court are at a more advanced stage in litigation.").

The Court notes that in considering staying a matter, it is appropriate to take into account any potential prejudice to the Parties. See Elite Constr. Team, Inc. v. Wal-Mart Stores, Inc., No. JKB-14-2358, 2015 WL 925927, at *3 (D. Md. Mar. 2, 2015); Skinner v. Armet Armored Vehicles, Inc., No. 4:12-cv-00045, 2015 WL 540156, at *4 (W.D. Va. Feb. 10, 2015); Avalonbay Communities, Inc. v. San Jose Water Conservation Corp., No. 07-306, 2007 WL 2481291, at *1 (E.D. Va. Aug. 27, 2007). Therefore, the Court will allow the Plaintiffs in this case the option to proceed on their individual claims, while holding in abeyance questions of class certification that would unnecessarily overlap, duplicate, or interfere with the California Action. Because the Court would allow this

matter to proceed as to the named Plaintiffs at Plaintiffs' discretion, the Court discerns no prejudice that will result from instituting a stay in order to more effectively address class certification and to avoid duplication with the California Action.

IV.     Conclusion

For the reasons set out above, the Court concludes that Defendant's Motion to Dismiss should be denied.  However, given the pending California Action, further proceedings in this matter will be stayed.  Upon final adjudication of the California Action, Plaintiffs may file a renewed Motion for Class Certification.  The Court will consider at that time a schedule for preliminary discovery prior to an evidentiary hearing on the class certification question.  Alternatively, should Plaintiffs desire to proceed with discovery only as to the named Plaintiffs while the California Action remains pending, Plaintiffs may file a Motion so requesting, and the case will be set for pretrial scheduling conference while the class certification request remains in abeyance.

IT IS THEREFORE RECOMMENDED that Defendant's Motion to Dismiss [Doc. #21] be denied.

IT IS ORDERED that Defendant's Request for Judicial Notice [Doc. #28] is GRANTED to the extent the Court has considered the information submitted, although that submission does not affect the determination of the Motion to Dismiss.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Class Certification [Doc. #23] is STAYED, and all further proceedings in this matter are STAYED pending final adjudication of the class action in <u>Washington v. Key Health Medical Solutions, Inc.</u>, Case No.: BC473716 (Los Angeles, CA Superior Ct.), unless Plaintiffs submit a motion to proceed with discovery only as to the named Plaintiffs while the California Action remains pending.

IT IS FURTHER ORDERED that Plaintiffs' Request for Judicial Notice and for Leave to Submit New Evidence in Support of Motion for Class Certification [Doc. #52] is GRANTED to the extent that the Court has considered the information submitted, and as such, Defendant's Motion to Strike Plaintiffs' "Disclosure of New Matters" [Doc. #54] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Oral Argument on Class Certification [Doc. #61] is DENIED as moot in light of the stay of these proceedings.

This, the 23rd day of March, 2015.

     /s/ Joi Elizabeth Peake     
United States Magistrate Judge